3:26-mj-146

**DISTRICT OF OREGON, ss:**                    **AFFIDAVIT OF JARRETT MILLER**

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Jarrett Miller, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I have been sworn by the U.S. Department of Justice Federal Bureau of Investigations (FBI) as a Special Federal Officer authorizing me to exercise the powers of enforcement personnel set forth in Section 878, Title 21, Unites States Code.  I am a Detective with the Multnomah County Sheriff's (MCSO) assigned to the Special Investigations Unit (SIU, also referred to as MCSO-SIU) and have been with the Sheriff's Office since September 11, 2017. I currently hold a Basic and Intermediate Police Officer Certification – accredited by the Oregon Department of Public Safety Standards & Training (DPSST).  I have attended hundreds of hours of police training including the International Narcotics Interdiction Conference, the California Narcotics Officers Conference and Oregon Narcotics Enforcement Conference which have taught the current trends in the illicit drug world, the basic profile of drug traffickers, the handling of confidential informants and more.

2.      During my employment as a sworn law enforcement officer, I have investigated hundreds of criminal incidents.  Those criminal incidents include, but are not limited to: DUII's, assaults, thefts, criminal mischiefs, robberies, burglaries, forgeries, identity thefts, weapons offenses, narcotics offenses, sex offenses, and fugitive apprehension.  I am familiar with criminal investigations and the collection of evidence, which support those criminal investigations and have personally conducted at least 50 drug investigations resulting in warrants being issued, commercial quantities of drugs seized, and felony arrests.  I have become familiar with how drug traffickers operate.

 **Page 1 – Affidavit of Jarrett Miller**

3.     I submit this affidavit in support of a criminal complaint and arrest warrant for Clyde Covaci, hereinafter "**Clyde**"), a male, with a date of birth of xx/xx/1978, for committing the felony offenses of:

   a.     Possession with Intent to Distribute 50 grams or more of a Mixture and Substance containing Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii); and,

For the reasons stated below, I have probable cause to believe, and I do believe, that **Clyde** has committed the Target Offense.

4.     This affidavit is intended only to show that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all of my knowledge about this matter.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

### Applicable Law

5.     Title 21, United States Code, Section 841(a)(1) makes it illegal to manufacture, distribute, and possess with intent to manufacture or distribute a controlled substance.

### Background of Investigation

6.     Over the course of the past two months, SIU has been investigating a drug trafficker, identified as **Clyde Covaci**, that has been distributing methamphetamine in the Portland Metro area. SIU established Clyde lived at 10424 NE Glisan St. with his sister, Laviana Covaci, who was wanted out of Washington County.

 **Page 2 – Affidavit of Jarrett Miller**

7.      On May 27, 2026 I applied for and was granted a warrant to search Clyde's residence and person. The warrant was signed by the United States Magistrate Judge Jolie Russo. See U.S. District Court Case, 3:26-mc-00536 A-B.

8.      On May 28, 2026, members of SIU and the FBI executed the warrant at 10424 NE Glisan St. Members of SIU, and the FBI were wearing agency issued raid vests displaying law enforcement identifiers. SIU/FBI knocked on the front door while announcing they were with the FBI, had a search warrant and to come to the door. After receiving no response, a ram was used to force entry. SIU/FBI contacted and arrested **Clyde** who was sleeping on a futon in the living room and arrested Liviana who was upstairs.

9.      I recited *Miranda Warnings* to Clyde who acknowledged he understood his rights. I explained to Clyde he was the subject of a drug investigation I was conducting, read the warrant to him and he told me he had no questions. Clyde was cooperative and told me there was approximately one pound of methamphetamine in a bag next to the futon he was laying on when SIU arrested him. He told me there were no firearms in the home but there would be ammunition.

10.     Clyde told me he sells methamphetamine and had just purchased one pound of methamphetamine the night prior to being arrested. He told me the dealer he purchased the one pound from was not his main supplier. Clyde indicated the black Samsung cellphone that was located in the living room belonged to him. He provided consent to search the phone and told me the passcode. I reviewed the phone in Clyde's presence as he told me about his main drug source of supply whom he would frequently purchase methamphetamine from. Clyde told me he typically purchases three pounds of methamphetamine from this supplier and would have to drive to southern California pick up the drugs. Clyde told me he had last purchased methamphetamine from this supplier approximately two months ago.

 **Page 3 – Affidavit of Jarrett Miller**

11.    I contacted Lavinia and recited *Miranda Warnings* to her which she acknowledged she understood. She told me she had no questions. She also consented to a search of her phone and provided the passcode.

12.    SIU searched the residence and located the following evidentiary items:

- 15 firearm magazines

- 1 bag of miscellaneous ammunition

- $691 in US Currency

- 5 bags of suspected methamphetamine (approximately 331.5g)

- 1 bag of a suspected fentanyl (approximately 9.3g)

- 2 cellphones (one belonging to Clyde and one belonging to Livinia)

13.    Clyde and Lavinia were transported to the Multnomah County Detention Center. There were numerous cats in the home and per Lavinia's request the key to the residence was left with her neighbor, Naomi, who agreed to take care of the cats.

14.    All items of evidence were transported to the Sheriff's Office. Detective Beam used a Mobile Field Detect Test to test the suspected methamphetamine found in the living room which showed presumptive positive for methamphetamine – a schedule II drug and weighed approximately 331.5g (including packaging). Detective Beam used a Mobile Field Detect Test to test the bag of suspected fentanyl found in the living room which showed presumptive positive for fentanyl and weighed approximately 9.3g (including packaging). The evidence was lodged in an evidence locker.

/ / /

/ / /

/ / /

**Page 4 – Affidavit of Jarrett Miller**

15.    The methamphetamine seized from Clyde's residence is depicted below:



16.    I know from training and experience as a narcotics officer that methamphetamine is a Schedule II controlled substance.  I also know from training and experience that methamphetamine in its illicit form is a highly addictive stimulant that causes both short-term and long-term psychiatric effects.  Users of methamphetamine often experience extreme agitation, anxiety, paranoia, visual and auditory hallucinations.  Because methamphetamine is a very potent stimulant, users of methamphetamine run the risk of seizures, elevated blood pressure, stroke, and death.  I also know, based upon my training an experience, that methamphetamine is typically used in quantities of one-tenth (.1) to one-quarter (.25) of a gram, either intravenously or by being smoked.  I know users of methamphetamine commonly possess a lighter and a glass pipe, referred to as a "meth pipe," to smoke methamphetamine and this pipe typically has dark discoloration from the user burning methamphetamine within it.  I know a gram of methamphetamine on the street can sell for around $10 to $20 and that users typically buy only gram to several grams at a

**Page 5 – Affidavit of Jarrett Miller**

time.  A "ball" or an "eight-ball," which is roughly 3.5 grams, or 1/8th of an ounce, is a common amount for a user to buy and possess.  I know that methamphetamine addicts on the street do not regularly stockpile large amounts of methamphetamine but rather tend to buy a small amount of what they need and then resupply themselves when they run out.  Accordingly, I know that a person possessing approximately 20 grams of methamphetamine does not possess it for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.

17.    I also know from my training and experience that drug traffickers possess firearms as "tools of the trade" in furtherance of their drug trafficking activities.  I know that drug traffickers possess firearms for a variety of reasons, to include: first, having an accessible gun provides defense against anyone who may attempt to rob the trafficker of their drugs or drug profits; second, possessing a gun, and letting everyone know that you are armed, lessens the chances that a robbery will even be attempted; third, having a gun accessible during a transaction provides protection in case a drug deal turns sour; fourth, the visible presence of a gun during the transaction may prevent the deal from turning sour in the first place; and, fifth, having a gun may allow the drug trafficker to defend their residences or "stash houses" from which they operate.  I also know that the cocaine trade in Portland, Oregon is inherently dangerous and commonly cocaine dealers possess guns for protection.

18.    I have had a chance to review **Clyde's** criminal history, and I know that he is a convicted felon with three prior felony drug convictions.

### Conclusion

19.     Based on the foregoing, I have probable cause to believe, and I do believe, that **Clyde Covaci** has committed the Target Offense and I therefore request that the Court issue a criminal complaint and arrest warrant for **Clyde Covaci**.

**Page 6 – Affidavit of Jarrett Miller**

20.    Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Kemp Strickland.  AUSA Strickland advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
JARRETT MILLER
Special Federal Officer
Federal Bureau of Investigation


Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  1:10    a.m./p.m. on May 29, 2026.


_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge


**Page 7 – Affidavit of Jarrett Miller**